UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JOSEPH A. RUSHING, | ) |
| Plaintiff, | ) |
| v. | ) No. 1:23-cv-00260-JRS-KMB |
| JASON CARTER, CENTURION HEALTH OF INDIANA LLC, LOWE, JACK LYNCH, | ) |
| Defendants. | ) |

**Entry Granting Unopposed Motions for Summary Judgment**

Plaintiff Joseph Rushing alleges that Defendants Dr. Jason Carter and Counselor Lynch were deliberately indifferent to his serious medical conditions and that Defendant Centurion Health of Indiana, LLC ("Centurion") had policies that caused his injuries. Dkt. 18.[1] Both the Medical Defendants (Dr. Carter and Centurion) and Counselor Lynch move for summary judgment, arguing that Mr. Rushing failed to exhaust his available administrative remedies as required by the Prison Litigation Reform Act ("PLRA") before filing this lawsuit. For the reasons explained below, the motions for summary judgment, dkts. [72] and [75], are **GRANTED**, and the claims against the Medical Defendants and Counselor Lynch are **DISMISSED WITHOUT PREJUDICE.**

---

[1] Mr. Rushing also pursues claims against Defendant Counselor Lowe. Dkt. 12. Counselor Lowe raised an exhaustion defense but never filed a motion for summary judgment, so, as the Court has previously stated, Mr. Rushing's claims against Counselor Lowe will proceed to the merits. Dkt. 71. The Court does not discuss those claims further.

# I.
# Summary Judgment Standard

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572–73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). A court only has to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it need not "scour the record" for evidence that might be relevant. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 573−74 (7th Cir. 2017) (cleaned up).

A party seeking summary judgment must inform the district court of the basis for its motion and identify the record evidence it contends demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

Mr. Rushing failed to respond to the summary judgment motions. Accordingly, facts alleged in the motions are "admitted without controversy" so long as support for them exists in the record. S.D. Ind. L.R. 56-1(f); *see also* S.D. Ind. L.R. 56-1(b) (party opposing judgment must file response brief and identify disputed facts). "Even where a non-movant fails to respond to a motion

for summary judgment, the movant still has to show that summary judgment is proper given the undisputed facts." *Robinson v. Waterman*, 1 F.4th 480, 483 (7th Cir. 2021) (cleaned up).

## II.
## Factual Background

### A. Grievance Policy

At all times relevant to the claims in this suit, Mr. Rushing was incarcerated at New Castle Correctional Facility ("New Castle"), a prison within the IDOC. The IDOC has a standardized grievance process that was in place during the time Mr. Rushing alleges his rights were violated. Dkt. 72-1 at 2. Inmates are told about the process during their orientation at New Castle, and a copy of the policy is available to inmates at the New Castle law library or on request. *Id.* at 2–3.

IDOC Policy and Administrative Procedures 00-02-301, Offender Grievance Process is the IDOC policy governing the grievance procedure and details how a prisoner must exhaust his administrative remedies. *Id.* at 10–24. During the relevant period, the grievance process consisted of three steps: (1) submitting a formal grievance following unsuccessful attempts at informal resolutions; (2) submitting a written appeal to the facility Warden/designee; and (3) submitting a written appeal to the IDOC Grievance Manager. *Id.* at 12. Successful exhaustion of the grievance process requires timely pursuing each step or level of the process. *Id.* at 2.

Only the first two steps of the procedure are at issue here, so the Court focuses on them. As to the first step, inmates must submit grievances no later than 10 business days from the date of the incident. *Id.* at 18. In a grievance, an inmate must, among other things "suggest appropriate relief or remedy." *Id.* at 19. The facility's grievance specialist then has 10 business days to either return an unacceptable grievance or accept the grievance and provide a receipt. *Id.* at 18. The grievance specialist may reject the grievance and return it to the inmate unfiled if it does not meet the standards set out in the grievance policy or if it was filed more than 10 business days after the

event in question. *Id.* at 19. When a grievance is returned, the inmate is responsible for making any necessary revisions to the grievance and returning the revised grievance to the grievance specialist within 5 business days from the date the grievance specialist returns it to him. *Id.* There is no provision allowing an inmate to file an appeal about the decision to return the grievance rather than accept it. *See generally id.* at 10–24.

As to the second step, after the grievance specialist responds to an accepted grievance, the inmate has 5 business days to file an appeal to the Warden/designee. *Id.* at 21.

### B. Plaintiff's Allegations

As summarized in the Screening Order, dkt. 12, Mr. Rushing alleges that he sought treatment for swollen legs and gashes and splits on his feet. During his visit, Dr. Carter refused to provide pain medication, a wheelchair, or cane. The refusal caused further damage to his feet. Because his condition continued to worsen, he asked Counselor Lynch to contact medical for more care, but Counselor Lynch refused to help.

Later, Mr. Rushing fell in his dorm and was taken to medical on a stretcher. Dr. Carter took pictures and prescribed medications, but he did not send out the prescription in a timely manner, so Mr. Rushing did not get the medication for more than three months. As a result, his condition worsened. Finally, Mr. Rushing alleges that Centurion's medical care and prescription dispensary policy caused delays that exacerbated his condition.

### C. Plaintiff's Attempts at Exhaustion

#### 1. Counselor Lynch

Counselor Lynch has identified six grievance documents that could even arguably relate to Mr. Rushing's claims against him. These grievance documents are also among those arguably

relevant to Mr. Rushing's claims against the Medical Defendants. The Court summarizes the grievance documents and their dispositions as follows[2]:

- Grievance 145228, submitted September 5, 2022: Mr. Rushing was suffering from a serious skin condition. He asked a non-party correctional officer to call medical, but the officer would not do so. He also asked Defendant Lowe to call medical. Finally, another correctional officer called medical. When Mr. Rushing got to medical, three medical practitioners refused to even examine him. As relief, he asked to see a dermatologist. Dkt. 72-1 at 45; *see also* dkt. 77-3 at 1. The grievance specialist responded to the grievance, *id.*, but Mr. Rushing did not file a first-level appeal, *id.* at 9.

- Returned grievance, submitted October 24, 2022: Mr. Rushing stated that he had been begging for a wheelchair because his feet had open slits in them. Dr. Carter took pictures of his feet, but no wheelchair was provided, even though it was obvious that he needed one. As relief, he asked for a wheelchair. *Id.* at 47. The grievance specialist returned the grievance to Mr. Rushing rather than accepting it, explaining that medical issues wheelchairs and that he needed to file a health-care request form. *Id.* at 46.

- Returned grievance appeal form, submitted October 24, 2022: Mr. Rushing contested the return of the October 24 grievance, stating that he felt he was "quite proficient" in his explanation and that it was obvious that he needed a wheelchair.

---

[2] Counselor Lynch's motion addresses some of the same grievance documents as the Medical Defendants' motion. For the sake of simplicity, the Court cites to the copies attached to the Medical Defendants' motion.

5

> *Id.* at 49. The appeal was returned because he did not have an active accepted grievance to appeal. *Id.* at 48.

- Returned grievance, submitted November 19, 2022: Mr. Rushing asked a non-party officer to call for a wheelchair and showed him his bleeding feet. Mr. Rushing had a pass for a wheelchair but an inmate wheelchair pusher was told that medical did not have a wheelchair for him. *Id.* at 51. The grievance specialist returned the grievance because it did not include any requested relief. *Id.* at 50.

- Returned grievance, submitted January 2, 2023: Mr. Rush complained that none of the treatment medical staff had provided for his skin condition was adequate and asked to see a dermatologist. *Id.* at 53. The grievance specialist returned the grievance because it addressed the same issues as those in Grievance 145228, so it was untimely. In addition, he was beyond the time to appeal the resolution of Grievance 145228. *Id.* at 52.

- Grievance 151330, submitted February 1, 2023: Mr. Rushing complained that he had been denied his medication because there was no order for the medication. *Id.* at 54. The grievance specialist responded to the grievance, *id.* at 54, but Mr. Rushing did not file an appeal, *id.* at 7–8.

### 2. Medical Defendants

In addition to the grievances summarized above, the Medical Defendants have identified five additional grievances that are arguably related to Mr. Rushing's claims against them, which the Court summarizes as follows:

- Grievance 120287, submitted November 23, 2020: Mr. Rushing complained that he had severe foot issues, had twice asked for medical boots, and had been ignored.

Dkt. 72-1 at 30. The grievance specialist responded, *id.* at 27, but Mr. Rushing did not file an appeal, *id.* at 4.

- Grievance 128707, submitted June 15, 2021: Mr. Rushing complained that he had submitted health-care request forms to renew his medications but had not received them. *Id.* at 28. The grievance specialist responded, *id.* at 29, but Mr. Rushing did not file an appeal, *id.* at 7.

- Grievance 133288, submitted September 20, 2021: Mr. Rushing again complained about delays in receiving renewed prescription medications. *Id.* at 37. The grievance specialist responded, *id.* at 32, but Mr. Rushing did not file an appeal, *id.* at 7.

- Grievance 136616, submitted December 26, 2021: Mr. Rushing complained that he had not been sent for a follow-up appointment with an outside podiatrist, as the podiatrist had recommended. *Id.* at 42. The grievance specialist responded, *id.* at 38, but Mr. Rushing did not appeal, *id.* at 5.

- Returned grievance, submitted June 14, 2022: Mr. Rushing complained that medical delayed in responding to a health-care request form he submitted in April and that, when he was finally seen, the medication he was provided was ineffective. *Id.* at 44. The grievance was returned as untimely, and Mr. Rushing was told to submit another health-care request form if he needed to see medical again. *Id.* at 43.

### III. Discussion

The PLRA requires that a prisoner exhaust available administrative remedies before suing over prison conditions. 42 U.S.C. § 1997e(a). "[T]he PLRA's exhaustion requirement applies to

all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002) (citation omitted).

"To exhaust administrative remedies, a prisoner must comply strictly with the prison's administrative rules by filing grievances and appeals as the rules dictate." *Reid v. Balota*, 962 F.3d 325, 329 (7th Cir. 2020) (*citing Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006)). A "prisoner must submit inmate complaints and appeals 'in the place, and at the time, the prison's administrative rules require.'" *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004) (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002)). "Because exhaustion is an affirmative defense," Defendants must show that "an administrative remedy was available and that [Mr. Rushing] failed to pursue it." *Thomas v. Reese*, 787 F.3d 845, 847 (7th Cir. 2015).

Counselor Lynch has met his burden of proving that Mr. Rushing "had available [administrative] remedies that he did not utilize." *Dale*, 376 F.3d at 656. The undisputed evidence shows that Mr. Rushing was aware of the grievance process. In addition, Counselor Lynch contends that none of the grievances even arguably related to the claims in this lawsuit relate to him or would have put the prison on notice that Mr. Rushing was complaining about him. The Court has reviewed the grievances at issue and agrees. Moreover, Mr. Rushing also has not filed a response contesting that characterization. Accordingly, the Court concludes that Mr. Rushing did not exhaust his available administrative remedies as to his claims against Counselor Lynch.

The Medical Defendants have also met their burden of proving that Mr. Rushing failed to exhaust available administrative remedies. The undisputed evidence shows that, of the 11 grievances arguably related to the claims in this lawsuit, he did not file first-level appeals as to 6

of them. The other 5 were returned unfiled because of various issues, and Mr. Rushing offers no argument suggesting that the returns were improper.

In short, Mr. Rushing did not complete the available administrative process as required before filing this lawsuit. *Reid*, 962 F.3d at 329. The consequence of his failure to exhaust his administrative remedies, in light of 42 U.S.C. § 1997e(a), is that his claims against Counselor Lynch and the Medical Defendants must be dismissed without prejudice. *Id*; *see also Ford v. Johnson,* 362 F.3d 395, 401 (holding that "*all* dismissals under § 1997e(a) should be without prejudice.").

### IV. Conclusion

For the above reasons, Counselor Lynch's and the Medical Defendants' unopposed motions for summary judgment, dkts. [72] and [75], are **GRANTED**. The claims against Defendants Lynch, Carter, and Centurion are **DISMISSED WITHOUT PREJUDICE**, and the **clerk is directed** to terminate them as defendants on the docket. Because Mr. Rushing's claims against Counselor Lowe are proceeding to the merits, *see* dkt. 71, no final judgment will enter at this time.

**SO ORDERED.**

Date: 3/21/2025

JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution:

JOSEPH A. RUSHING
895997
NEW CASTLE - CF
NEW CASTLE CORRECTIONAL FACILITY - Inmate Mail/Parcels
1000 Van Nuys Road
NEW CASTLE, IN 47362

Jeb Adam Crandall
BLEEKE DILLON CRANDALL ATTORNEYS
jeb@bleekedilloncrandall.com

Joseph Thomas Lipps
BBFCS ATTORNEYS
jlipps@bbfcslaw.com